UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE SCOTT TURNER,

    Petitioner,

v.

JAMES CORRIGAN,

    Respondent,
_____/

Civil No. 2:23-CV-11529
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Eugene Scott Turner, ("Petitioner"), confined at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for first-degree premeditated murder, M.C.L.A. § 750.316(a), felon in possession of a firearm, M.C.L.A. § 750.224f, felony-firearm, M.C.L.A. § 750.227b, and tampering with evidence, M.C.L.A. § 750. 483a(6)(b). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

Petitioner was convicted following a bench trial in the Wayne County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the shooting death of Robin Mcardle. Defendant ran an illicit drug dealing business, and Mcardle brought new customers to defendant. Defendant's ex-girlfriend, Lashawndra Bell, testified that there was an "issue" between defendant and Mcardle because defendant

1

believed Mcardle was stealing his customers. Defendant testified at trial and denied there ever being bad blood between Mcardle and himself.

On the day leading up to the murder, defendant arrived at the home of Daniel Sanders with Dynada Bulley (defendant's then-girlfriend), Mcardle and a friend referred to only as "Drew." Bell was also present at Sanders's home and at one point she walked into the bathroom and saw defendant with Drew. Recounting the incident at trial, Bell testified that defendant appeared angry and stated, "I hate snitches," before shooting a handgun indiscriminately without hitting anyone. At the time of this incident, Mcardle was in the living room. Defendant admitted that he fired his handgun in the bathroom at Sanders's house, but denied he had done so because he was mad at Mcardle.

After this incident, defendant, Bulley, Mcardle and Drew left Sanders's house together. The four got into Bulley's Chevrolet Impala, bound for defendant's cousin's home. Defendant drove with Bulley in the front passenger seat; Mcardle rode in the back-passenger seat directly behind defendant. According to Bulley, while driving defendant suddenly yelled, "I hate snakes," pulled out his gun, aimed it toward the backseat, and fired the gun four or five times. No one was shot, but according to Bulley, Mcardle immediately exited from the Impala and ran away. Defendant chased after her on foot, and when she tried to flag down a passing car for help, defendant waved his handgun, and the car drove off. Eventually defendant and Mcardle returned to the car together. Bulley later saw Mcardle with a gun and suggested that defendant may have given it to her so that she would feel safe; Bulley did not believe the gun had any bullets in it. Defendant denied shooting his gun in the Impala, denied that Mcardle left the car, and denied saying, "I hate snakes."

Bulley testified that when they arrived at defendant's cousin's home, defendant instructed her to go inside and have his cousin bring a gun to him. Bulley went inside and spoke with defendant's cousin, while defendant and Mcardle waited in the car. Bulley testified that defendant's cousin put a gun in her coat and went outside; when she returned, she no longer had the gun. When the Impala drove off, only defendant and Mcardle were in the car.

After Bell left Sanders's house, she walked to the home of Paul Cokewell. Bell was worried about Mcardle and used a friend's phone to call her. Cokewell was present for the phone call. Bell testified that Mcardle answered the phone and was crying and sounded "very scared." Bell could hear defendant "hollering at her" in the background. Bell heard Mcardle say, "[H]elp me. He's trying to kill me." She heard defendant respond, "It's because of you." And Bell also heard Mcardle say, "Why are you doing this

2

to me," and, "Help me. I can't breathe." Cokewell also testified at trial and his account of the phone call was largely consistent with Bell's version.

Bulley testified that defendant returned to his cousin's home about 15 to 20 minutes after leaving with Mcardle and that he was the only one in the car. Bulley observed the back window on the driver's side of the Impala was "busted," and blood was in the interior of the car on the driver's side of the rear passenger seat. At trial, defendant admitted that he had driven off in the Impala with Mcardle, and that she was shot during this time. However, defendant maintained that an unnamed drug dealer [1] had met up with him and shot Mcardle. Defendant's drug dealer then directed defendant to drive to a vacant lot. According to defendant, once at the vacant lot, the drug dealer pulled Mcardle out of the Impala and shot her again.

Raysheane Johnson-Louie lived next to the vacant lot. She testified that she saw at least three figures in the Impala and that the driver and a passenger from the back seat exited the vehicle and pulled a third figure from the car, who had been seated in the rear of the car behind the driver's seat. Johnson-Louie testified that the driver shot the third person three times. Police arrived on the scene shortly thereafter to find Mcardle dead in the vacant lot next to Johnson-Louie's house, having sustained two gunshot wounds to her head and one to her neck.

After defendant arrived back at his cousin's house, he and Bulley drove the Impala to a residential street and tried to light it on fire. Defendant and Bulley then drove in a separate vehicle to another gas station to get more gasoline, but by the time they arrived back to the Impala, two police cars were on the scene. The two turned around and booked a hotel room for the night. Once at the hotel, at defendant's request, Bulley made a false police report that someone had stolen her car. In the Impala, the police found six 9mm shell casings; four on the front passenger seat and two in the rear seats.

Bulley was charged as an accessory after the fact and arrested. She was offered a plea deal: probation in exchange for her testimony against defendant. As part of this plea deal, Bulley made a written statement to police on May 30, 2019, in which she stated that defendant had confessed to killing Mcardle and had explained his motive. At trial, when the prosecutor started questioning her about this statement, Bulley had issues remembering what she had told the police. However, she affirmed multiple times that everything in her police statement was true.

*People v. Turner*, No. 353939, 2021 WL 5405799, at * 1–2 (Mich. Ct. App. Nov. 18, 2021).

---

[1] Defendant declined to name the drug dealer because he was a "dangerous guy." (Footnote original).

3

Petitioner's conviction was affirmed. *Id., reconsideration den.* No. 353939 (Mich. Ct. App. Dec. 17, 2021)(ECF No. 8-18, PageID. 1224); *lv. den.* 509 Mich. 977, 973 N.W.2d 124 (2022).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the trial court violated petitioner's right to confrontation and due process, (2) the evidence was insufficient to convict, (3) prosecutorial misconduct, (4) ineffective assistance of counsel, and (5) cumulative error.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

#### A. Claim # 1. The Confrontation Clause/insufficiency of evidence claim.

In his first claim, petitioner alleges that there was insufficient evidence to convict him. As part of that claim, petitioner argues that his Sixth Amendment right to confrontation was violated because the judge, in her findings of fact, relied on Ms. Bulley's out-of-court statement to the police as substantive evidence, rather than merely as impeachment evidence. [2]

Petitioner's Confrontation Clause claim fails, because Ms. Bulley testified at petitioner's trial. There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004). As the Supreme Court explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal

---

[2] Respondent urges this Court deny petitioner's confrontation claim on the ground that it is procedurally defaulted because petitioner failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Petitioner's unpreserved Confrontation Clause claim is a part of his sufficiency of evidence claim, thus, it would be easier to simply address the merits of this claim.

citations omitted). Because Ms. Bulley testified at petitioner's trial and was subject to cross-examination, the use of her out-of-court statement to the police as substantive evidence did not violate petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

Ms. Bulley's out-of-court statements to the police were used by the prosecutor pursuant to M.R.E. 803(5) as a recorded recollection to refresh Ms. Bulley's memory when she claimed to be unable to recollect certain details of her statement to the police. Ms. Bulley adopted her prior statement to the police as being truthful even though she claimed not to remember making some of the remarks. *People v. Turner*, 2021 WL 5405799, at * 3. Admitting Ms. Bulley's statement did not violate the Confrontation Clause, "because Rule 803(5) does not require further cross-examination of a witness once a statement is properly admitted as a past recollection recorded." *United States v. Brown*, 800 F. App'x 455, 463 (9th Cir. 2020). As mentioned above, petitioner had a full opportunity to cross-examine Ms. Bulley about her limited recollections concerning the veracity of her statement to the police. Evidence admitted under 803(5) can be used as substantive evidence. *See, e.g., United States v. Smith*, 197 F.3d 225, 231 (6th Cir. 1999). Petitioner is not entitled to relief on his Confrontation Clause claim.

Petitioner also challenges the sufficiency of the evidence to convict.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt

6

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010); *See also Hayes v. Horton*, 596 F. Supp. 3d 978, 987 (E.D. Mich. 2022).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *See also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence."). Circumstantial evidence is sufficient to sustain a conviction at a bench trial. *See e.g. United States v. Baydoun*, 984 F.2d 175, 179 (6th Cir. 1993).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes

7

encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003); *See also United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020)(in a bench trial, credibility of witnesses is a question for trial judge).

Petitioner initially challenges the sufficiency of the evidence on the ground that the trial judge convicted him by improperly considering Ms. Bulley's out-of-court statement to the police that petitioner had confessed to killing the victim. As mentioned above, the admission of this statement did not violate the Confrontation Clause, thus, it was not improper for the judge to consider it.

Petitioner's admission to Ms. Bulley that he shot the victim is sufficient in and of itself to support his conviction, as well as to establish his identity as the perpetrator. "[A]n admission by the accused identifying himself (or herself) as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by

8

independent evidence." *United States v. Opdahl*, 610 F. 2d 490, 494 (8th Cir. 1979); *See Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)(petitioner's identity as murderer supported in part by evidence that he confessed several times to murdering sister); *Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008)(evidence sufficient to establish petitioner's identity as armed robber where his admissions placed him at the location of the crime); *Hatchett v. Withrow*, 185 F. Supp. 2d 753, 759 (E.D. Mich. 2002)(petitioner's identity as perpetrator of crime supported in part by his detailed confession to the crime). Moreover, assuming *arguendo* that Ms. Bulley's statement to the police was inadmissible, in determining a sufficiency claim, the "'reviewing court must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010)(quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)). Ms. Bulley's statement to the police that petitioner confessed to shooting the victim was properly considered by the judge in finding petitioner guilty and can certainly be used by this Court to reject petitioner's sufficiency of evidence claim.

Petitioner next claims the trial judge erred by finding that he "clearly had a motive to kill" the victim, which supported the trial judge's conclusion that premeditation and deliberation were proven beyond a reasonable doubt.

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F.

9

Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

In the present case, the judge properly found that there was evidence that petitioner had a motive to kill the victim, in light of Ms. Bulley's statement to the police that petitioner killed the victim because she "was going behind his back [and] selling drugs to people he cared for," as well as Ms. Bell's testimony that there was an "issue" between petitioner and the victim because she was stealing his customers. *People v. Turner*, No. 2021 WL 5405799, at * 3. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). Evidence that petitioner had a motive to shoot the victim because he accused her of stealing his drug customers supported the judge's conclusion that the shooting was premeditated and deliberate. *See Drain v. Woods*, 902 F. Supp. 2d 1006, 1028 (E.D. Mich. 2012); *aff'd* 595 F. App'x 558 (6th Cir. 2014).

The Michigan Court of Appeals further found that the judge reasonably inferred that petitioner's "escalating anger and violence throughout the day supported a finding of premeditation and deliberation." *People v. Turner*, 2021 WL 5405799, at * 4:

> Again, Bell testified that defendant fired multiple gunshots while in Sanders's bathroom, apparently angry at a "snitch." As defendant points out, his use of the word "snitch" may suggest he was referring to someone besides Mcardle because a snitch refers to someone cooperating with law

10

enforcement. But it is for the fact-finder alone to sift through competing inferences. And the subsequent incident in the Impala further supports the conclusion that defendant was in fact angry at Mcardle. Bulley testified that defendant fired multiple shots toward the backseat where Mcardle was seated after announcing, "I hate snakes." Mcardle then ran out of the vehicle, and defendant apparently coaxed her back into the vehicle by giving her the gun. Defendant then procured another gun from his cousin and drove off alone with Mcardle. Bell and Cokewell also testified to statements made by Mcardle during a phone call around this time. According to their testimony, Mcardle sounded scared and distraught and they overheard defendant making statements to her such as, "It's because of you," and, "After all I've done for you, Bitch."
*People v. Turner*, 2021 WL 5405799, at * 4 (internal citation omitted).

Evidence that petitioner had ill feelings toward the victim supports a finding of premeditation and deliberation. *See Scott v. Elo*, 302 F.3d at 603.

Petitioner next claims that the trial judge erred in crediting Ms. Bulley's testimony regarding the initial shooting in the Impala, as opposed to petitioner's testimony, in which he denied that the incident happened.

In reviewing a state court conviction on habeas review, a federal court that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith,* 565 at 7 (quoting *Jackson v. Virginia,* 443 U.S. at 326). "Moreover, when evidence in a bench trial 'consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses.'" *Hayes v. Horton*, 596 F. Supp. 3d at 989 (quoting *Bryan v. Virgin Islands*, 150 F. Supp. 2d 821, 827 (D.V.I. 2001) (per curiam), *aff'd sub nom. Virgin Islands v. Bryan*, 29 F. App'x 65 (3d Cir. 2002) (unpublished)). Th trial court judge chose to credit Ms. Bulley's testimony and chose to

11

reject petitioner's testimony that the incident in the Impala did not occur. "This Court must defer to the trial court's credibility findings." *Id.*

As a related claim, petitioner argues that the trial judge erred by concluding that the physical evidence corroborated the testimony of the prosecution witnesses. The Michigan Court of Appeals rejected this claim:

> Defendant also argues that the trial court erred by finding that corroborating physical evidence supported the credibility of the prosecution's witnesses. Defendant's overriding argument is that, on several matters, the physical evidence was equally corroborative of his version of events. For instance, the trial court found that Bell's testimony regarding the bathroom shooting was credible because it was supported by the physical evidence. But defendant—testifying after the prosecution's offer of proofs—did not deny that he fired multiple shots while in Sanders's bathroom, and so he argues that this fact did not support the trial court finding Bell credible. However, defendant presents no compelling argument as to why the trial court should have found that his testimony, as a whole, was more credible that the prosecution's witnesses. Further, the more specific arguments defendant makes against the trial court's credibility determinations are unpersuasive. Defendant contends that the trial court was wrong to credit Bulley's testimony about the initial shooting in the Impala because, according to defendant, Bulley "repeatedly denied" seeing any damage to the Impala when she exited it at his cousin's home. However, while Bulley testified that she did not see any bullet holes or damage to her vehicle after the initial shooting, she testified that she did not inspect her vehicle when exiting it. Defendant also argues that phone records showing that Mcardle had a 12-minute phone conversation with Bell, which belies Bell and Cokewell's assertions they had only a brief conversation with her. But, contrary to defendant's argument, Bell and Cokewell did not testify that their conversation with Mcardle was brief. Therefore, the trial court did not err by concluding the phone records corroborated Bell and Cokewell's testimony.
>
> *People v. Turner*, 2021 WL 5405799, at * 4.

The Michigan Court of Appeals' decision was reasonable. Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The prosecutorial misconduct/ineffective assistance of counsel claim.**

In his second claim, petitioner argues he was denied a fair trial because of prosecutorial misconduct. In the alternative, he argues that trial counsel was ineffective for failing to object. [3] Petitioner also alleges cumulative error.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

---

[3] Respondent argues that petitioner's prosecutorial misconduct claim is procedurally defaulted because petitioner failed to object at trial. Petitioner argues in the alternative that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

At the outset, this Court notes that petitioner was convicted by a judge sitting without a jury. A federal court presumes that a judge, sitting as the trier of fact, "can readily identify credible evidence, give proper weight to the evidence, and understand what law is relevant to his or her deliberations[,]." *Hill v. Shoop*, 11 F.4th 373, 433 (6th Cir. 2021)(internal citations omitted). Petitioner has provided no evidence that shows that the judge "was incapable of discerning what constitutes admissible evidence and parsing such evidence out from any inflammatory or irrelevant comments by the prosecutor." *Id.*

Moreover, none of petitioner's prosecutorial misconduct claims have any merit.

Petitioner first alleges that the prosecutor argued facts not in evidence when discussing Ms. Bulley's testimony in his closing argument.

It is improper for a prosecutor during opening or closing arguments to bring to the jury [or the fact finder] purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

Petitioner initially claims that the prosecutor should not have referred to Ms. Bulley's statement to the police in his closing argument. However, Ms. Bulley's statement to the police was admissible as substantive evidence, hence, the prosecutor did not err in mentioning Ms. Bulley's statement to the police in his closing argument.

Petitioner further claims that the prosecutor erred by referencing Ms. Bulley's testimony to argue that petitioner made threatening statements to the victim during the phone call initiated by Bell. The prosecutor argued:

14

> [Petitioner] says that it was a lie that there was this phone call with [Mcardle] where she was scared and where he was threatening her. Paul Cokewell says that call happened. Who's more credible? Lashawndra Bell says that call happened. Who's more credible? Dynada Bulley said that incident happens. Who's more credible?

The Michigan Court of Appeals rejected the claim, because the prosecutor's comments were based on a reasonable inference from the evidence:

> Defendant is correct that Bulley did not provide any testimony regarding the phone call, but the prosecutor argued only that Bulley "said that incident happens." (Emphasis added). The distinction seems to stem from the uncertainty as to when the phone call between Bell and Mcardle occurred. The prosecutor appears to have been arguing that the phone call in which Mcardle pleaded for help took place when she ran from the Impala and tried to flag down an approaching vehicle, as described by Bulley's testimony. Because this was a reasonable inference to draw from the record, we cannot say that the prosecutor's argument on this matter was erroneous.

*People v. Turner*, 2021 WL 5405799, at * 5.

The prosecutor's remarks were not unreasonable because they were based on a reasonable inference from the record.

Petitioner next contends that the prosecutor improperly vouched for the credibility of Ms. Bulley by arguing that she had been consistent in her statements to the police, at the preliminary examination, and at trial.

The test for improper vouching for a witness is whether the jury [or factfinder] could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x. 627, 632, n.3 (6th Cir. 2010).

15

A prosecutor does not engage in vouching by arguing that the witnesses testified truthfully, when the arguments are based on the evidence and do not reflect a personal belief of the prosecutor. *See Cockream v. Jones*, 382 F. App'x 479, 484-85 (6th Cir. 2010). The prosecutor did not argue that he had any special knowledge about the witnesses that had not been presented to the judge. There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew from anything but [the witnesses'] trial testimony to argue that [they were] credible." *Cockream v. Jones*, 382 F. App'x at 485.

Petitioner next contends that the prosecutor injected inflammatory remarks regarding petitioner being a drug trafficker and his discharging of a firearm in the bathroom in order to attack petitioner's character. The Michigan Court of Appeals concluded that even if this was an improper argument that petitioner should not be believed because he was a bad character, "any resulting prejudice was tempered by the fact this was a bench trial." *People v. Turner*, 2021 WL 5405799, at * 6. This determination is reasonable, precluding habeas relief. *Hill v. Shoop*, 11 F.4th at 433.

Petitioner next claims that the prosecutor made an inflammatory comment by arguing that Ms. Bulley had "every reason to be scared of this defendant." The Michigan Court of Appeals rejected this claim, because there was evidence at trial from which one could infer that Bulley had reason to fear petitioner. *People v. Turner*, 2021 WL 5405799, at * 6. This determination was reasonable, precluding habeas relief.

Petitioner next argues that the prosecutor committed misconduct by failing to file a notice of intent to introduce other-acts evidence under MRE 404(b) regarding the incident in which petitioner discharged a gun in Sanders's bathroom.

16

Although F.R.E. 404(b) and its state counterpart M.R.E. 404(b) generally prohibit a prosecutor from introducing evidence of a defendant's prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a prosecutor from doing so, thus the rejection of petitioner's prosecutorial misconduct claim by the Michigan courts would not entitle petitioner to habeas relief. *See Wagner v. Klee*, 620 F. App'x 375, 378 (6th Cir. 2015).

Petitioner lastly argues that the prosecutor erred by asking petitioner and petitioner's mother to comment on the credibility of the prosecution witnesses.

A prosecutor generally cannot ask a witness to comment on the credibility of other witnesses. *See United States v. Dickens*, 438 F. App'x 364, 369–70 (6th Cir.2011)(collecting cases). The Michigan Court of Appeals rejected this claim, in part, because petitioner was unable to show that he was prejudiced by these questions in that the judge as fact finder knew that she alone would have to determine the credibility of the witnesses. *People v. Turner*, 2021 WL 5405799, at * 7–8. This decision was reasonable, precluding habeas relief. *Hill v. Shoop*, 11 F.4th at 433.

To prevail on his related ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding the claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

The prosecutor's comments did not deprive petitioner of a fundamentally fair trial; petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner lastly contends that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief on the grounds of cumulative error. *Id.*

## IV. Conclusion

The petition is denied with prejudice. The Court denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

The Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that:

(1) The petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

(2) A certificate of appealability is DENIED.

(3) Petitioner is DENIED leave to appeal *in forma pauperis*.

s/ Nancy G. Edmunds  
HON. NANCY G. EDMUNDS  
U. S. DISTRICT JUDGE

Dated: March 5, 2024